1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FILED
CLERK, U.S. DISTRICT COURT

JUN 1 5 2006

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

- - -

HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,       )
                                )
            PLAINTIFF,          )
                                )
VS.                             )   CASE NO:
                                )   CR 02-00003(B)-CAS
KHALIL MOHAMMED, ET AL.,        )
                                )
            DEFENDANTS.         )
_____)

**ORIGINAL**

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TUESDAY, JULY 1, 2003

LOS ANGELES, CALIFORNIA

DOCKETED ON CM

JUN 1 9 2006

BY          029

LAURA MILLER ELIAS, CSR 10019
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 453
LOS ANGELES, CALIFORNIA 90012
PH:  (213)620-0890

UNITED STATES DISTRICT COURT

2716.

```
1

2    APPEARANCES OF COUNSEL:

3    ON BEHALF OF PLAINTIFF:

4              DEBRA W. YANG
               UNITED STATES ATTORNEY
5
               BY:  MICHAEL STERN
6              GONZALO CURIEL
               CHRISTOPHER BRUNWIN
7              ASSISTANT UNITED STATES ATTORNEY

8              1100 UNITED STATES COURTHOUSE
               312 NORTH SPRING STREET
9              LOS ANGELES, CA 90012

10
     ON BEHALF OF DEFENDANTS:
11
               APPEARANCES AS NOTED IN THE RECORD
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



1                              INDEX

2

3

    PROCEEDINGS                         PAGE

4

5

6   STATUS CONFERENCE                   4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

```
 1    LOS ANGELES, CALIFORNIA; TUESDAY, JULY 1, 2003; 3:30 P.M.
 2                             - - -
 3              THE CLERK:  Calling Criminal Case 02-000003B-CAS.
 4         United States versus multiple defendants.
 5         United States versus Khalil Mohammed, defendant
 6    Ahmad Jaris, defendant Stephen Almasri, Ferras Sallal, Adnan
 7    Isa, Mohammad Alasoud, Rasheed Aziz, Mahmoud Khattab, Tawfiq
 8    Musitef, Amjad Ayeh, Christian Boyd, Carlos Garcia Aguayo,
 9    Mufid Isa, Abdallah Ayeh and Said Abdelaziz.
10              Counsel, please state your appearances and the
11    defendant you represent.
12              MR. STERN:  Mike Stern appearing on behalf of the
13    United States.  With me is Christopher Brunwin and AUSA
14    Gonzalo Curiel.
15              THE COURT:  Good afternoon.
16              MR. KATZ:  Good afternoon, Your Honor.  David Katz
17    appearing for Mr. Khalil Mohammed who is present in custody.
18    I'm also appearing specially for Daryl Exum.  Daryl Exum's
19    client?  I assumed he was present.
20              THE COURT:  Is Mr. Alasoud not here?
21              MR. KATZ:  Apparently not, Your Honor.  Mr. Exum
22    just asked me a few minutes ago if I'd appear specially for
23    him.  I said I would willing to do that.  I didn't realize
24    that --
25              THE CLERK:  Mr. Alasoud is on bond.
```

UNITED STATES DISTRICT COURT

1      THE COURT:  We're going to need a waiver then.

2      MR. KATZ:  Perhaps I could just get

3  Mr. Exum's number and call him and see what the problem is.

4  I didn't know this was going to come up, Your Honor.  Sorry.

5      THE COURT:  Nor I.  All right.

6      MR. RICHARDS:  Ronald Richards on  behalf  of  Mufid

7  Isa who is present in custody.

8      MR. BROOKLIER:  Anthony Brooklier for Stephen

9  Almasri.  He is in custody, Your Honor.

10      MR. TAYLOR:  Good afternoon, Your Honor.  Chet

11  Taylor on behalf of Ahmad Jaris.

12      MR. BACKMAN:  Good afternoon, Your Honor.  Larry

13  Backman on behalf of the defendant Carlos Garcia Aguayo who

14  is present in court in custody being assisted by the Spanish

15  interpreter.

16      MR. BEZAHDI:  Good afternoon.  I'm Ken Bezahdi on

17  behalf of Amjad Ayeh.  He is present in court in custody.

18  And there's an ex parte application, Your Honor.

19      THE COURT:  I'm aware of it, yes.

20      MR. ANDERSON:  Good afternoon, Your Honor.  James

21  D. Anderson, Jr. on behalf of Abdallah Ayeh.  I think you

22  have our substitution of counsel up there.

23      THE COURT:  I believe I do, yes.  And I'm prepared

24  to sign that.  Is that going to necessitate a further

25  continuance?  I hope not.

1          MR. ANDERSON:  We don't need one, Your Honor.

2          THE COURT:  Okay.  Okay.  I've gone ahead and

3     signed it.

4          MR. ARREDONDO:  David Arredondo on behalf of

5     Rasheed Aziz who is present in custody being assisted by the

6     Arabic interpreter.

7          MR. TREMAN:  Mike J. Treman appearing with

8     Mr. Musitef.  He is present in court being assisted by an

9     Arabic interpreter.

10          MR. LANNIN:  Timothy Lannin appearing for Mahmoud

11     Khattab who is present in custody and has the assistance of

12     the Arabic interpreter.

13          MR. LICHTMAN:  Good afternoon, Your Honor.  Jay

14     Lichtman for Christian Boyd who is present.

15          MR. WERKSMAN:  Good afternoon, Your Honor.  Mark

16     Werksman appearing on behalf of Adnan Isa who is present in

17     custody and also being assisted by the Arabic interpreter.

18     Also, Your Honor, with the Court's permission I'm going to

19     stand in specially for Richard Steingard on behalf of his

20     client Ferras Sallal who is also present in custody.

21          THE COURT:  All right.  That's acceptable.

22          MR. MOBERLY:  Good afternoon, Your Honor.  Michael

23     Moberly for Mr. Said Abdelaziz who is present and in custody.

24          THE COURT:  Okay.  Is everyone accounted for?  Let

25     me say this.  As we approach trial dates and so forth, we're

just really going to have to find a way for everyone to be

here on time.  I realize it's difficult, but with this number

of people if you're going to be late, you're going to have to

arrange for someone to stand in for you so we can proceed.

Hopefully that won't be necessary, but it -- we've just got

to stay on schedule.

Let me -- I guess what I want to do is take this up

in reverse order and start with the motion for modification

of conditions of pretrial detention filed on behalf of

Mr. Musitef.  Okay.  Mr. Treman, I must say that I'm

disinclined to grant your motion.  I understand that your

client needs to work and we made that arrangement, but I

think he has at some times, and I'm not saying recently,

abused the terms of his bail.  And I just don't see that

there's a basis for granting your request.

MR. TREMAN:  Your Honor, just a couple things about

that.  I'm not disagreeing with the Court about the prior

abuse.  We dealt with that and my client paid the penalty for

that in the sense of he can no longer work which he was doing

at that time pursuant to the Court's prior granting him that

opportunity.  At that point in time we were looking at a July

trial date and I took the position okay before this Court

would even consider relooking at that, you're going to have

to spend some time demonstrating that you can comply with the

terms and conditions.

1          And if we're talking about a July trial date and

2     we're talking about a 6-week plus trial.  The issue with

3     regard to your going to work almost becomes mooted because

4     you're only going to work for a short period of time assuming

5     she agreed as of July 1st.  You'd only be working for two or

6     three weeks and then you're going to be in trial for 6 weeks.

7     Then on the 18th the Court continued the trial date.

8          THE COURT:  Yes, I did that because Mr. Katz

9     requested it and we waited for several days and there was no

10     objection filed by anyone.  And I recognize now there have

11     been some objections that have been raised after the fact.

12          MR. TREMAN:  And I looked at that particular filing

13     by Mr. Katz and I looked at the government's filing.  The

14     government's filing indicated that Mr. Katz had the

15     responsibility of contacting counsel to find out their

16     position.  And Mr. Katz as far as I know at least didn't

17     contact my office.  But be that as it may, I also recognize

18     from the government's filing at that point in time there was

19     a lawyer in the case who was very ill, and it turned out that

20     that lawyer ended up dying.

21          And as a result of that, it's obvious that the

22     Court was going to have to appoint new counsel and there's

23     going to be a continuance and so fine.  So the Court did

24     that.  My point is just on July 18th the Court now moves the

25     trial out to September and I don't know whether or not in

1    terms of this hearing that date is going to hold or whether

2    because of other new counsel coming it's going to move again.

3    So what I'm looking at standing here on July 1st is I'm

4    looking at several additional months of my client now not

5    being able to work under the current order.

6            I'm looking at the history of the case.  As

7    pretrial noted, he's been in compliance since the last time

8    of the hearing.  And the other thing about this that I just

9    to point out to the Court he's on home detention, but the

10   reality is that he's on the global positioning satellite

11   detention.  It's more than just home detention.  In other

12   words, pretrial services knows where he is.

13           THE COURT:  He does, they do so long as he keeps

14   the -- himself connected.  I've had people take off the

15   chain, cut through the chain and leave even though it's fool

16   proof.

17           MR. TREMAN:  And I recognize that that option

18   exists, but that -- first of all, and we're talking about

19   Barstow.  This is not -- he's living in kind of a remote,

20   relatively limited area.  If he's going to take off, he can

21   cut the bracelet off his ankle standing in his living room as

22   easily as he can three blocks away in a market.  So yes, that

23   option is there and the reality is being in the market is not

24   substantially different than the Barstow environment from

25   being in his living room.

1           In terms of the conditions under that, the other

2      things that are different from what we did before is there's

3      a specific location, there's an owner, there's a telephone

4      number that those times can all be set and verified by

5      pretrial services.  He can call in when he gets there.  I

6      mean there's some additional conditions and I purposefully

7      phrased the order so that as pretrial services governed it,

8      I'm not trying to control how they conduct their additional

9      monitoring.

10          But if the Court is going to have this additional

11     time, sooner or later if you put people on home detention,

12     they still have to be able to live.  They have to be able to

13     pay the rent, they have to be able to pay the electrical

14     bill, and you can't do that unless you have some means of

15     generating income.  Now, I suppose you could engage in

16     illegal activity, but that's not what we want him to do.

17          THE COURT:  No, that's correct.

18          MR. TREMAN:  So the option is get a job in a

19     defined, limited area and if he keeps the ankle on quite

20     frankly the Probation Department and Pretrial Services will

21     know if he leaves Barstow which is exactly what happened the

22     last time and he knows that's the case.  And if he cuts it

23     and runs away, then allowing him to work doesn't increase or

24     decrease those chances any and the Court may recall that even

25     at the time of the last violation it's not that he fled.  He

1    did violate the terms, but he showed up here in court as he

2    was required to do in connection with the hearing that took

3    place on that day.  Your Honor ordered him back a few days

4    later.  He came back.  He's sitting here now.

5               It just seems given the continuance, you know, if

6    this was a July trial date, I wouldn't be making the

7    argument.  But given the continuance and especially if the

8    Court considers extending it longer, I ask the Court to give

9    him an opportunity to demonstrate that what he's demonstrated

10   so far which is that he can will comply and that he will

11   comply.  Let him earn some money so that he can at least pay

12   his bills for where he lives.

13              THE COURT:  All right.  I understand your position.

14   Right now I continue to be persuaded by the recommendation of

15   pretrial services that I deny the request.  I'm going to deny

16   the request without prejudice.  If in fact there is an any

17   kind of material continuance of the trial, I will assume that

18   you'll come back at that point in time and we'll have to

19   address it, but I think for another two months I think home

20   detention is appropriate.

21              MR. TREMAN:  Thank you, Your Honor.

22              THE COURT:  Thank you.  So that takes care of that.

23   Then I think the next matter that we have today is Mr. Katz's

24   motion on behalf of his client regarding the conditions of

25   his detention at MDC.

1          MR. KATZ:  Your Honor, I have good news at least

2     from Your Honor's point of view, which is that it is now

3     moot.  I can report that they have moved him.  He's not in

4     solitary confinement as we speak today and we're very happy

5     about that.  So there may be some other relief that we'll

6     seek.  We mentioned about the documents that have not been

7     returned to him.  We're going to try to get to the bottom of

8     that.  We may have another application for relief, but this

9     one is moot.  Thank you very much.

10          THE COURT:  Fine.  Thank you.  Now, what else do we

11     have to address for today?

12          MR. STERNS:  Mr. Richards has a motion objecting to

13     the continuance.

14          THE COURT:  Okay.  Mr. Richards.

15          MR. RICHARDS:  Yes, Your Honor.  The last time when

16     I objected to the speedy -- to the continuance, I had

17     indicated to the Court that and the Court agreed that I

18     wouldn't have to keep making severance motions, and that I

19     had an objection that had been stated since the beginning

20     these continuances started.  What usually and when you

21     examine the trial rights or defendant's rights in the

22     Constitution they're all individual rights.

23          The government under the Rules of Criminal

24     Procedure can join many defendants in a trial and that's

25     fine, but when the prejudice of the joinder starts to

1    manifest itself into a denial of the individual rights that's

2    when the joinder shouldn't be used to usurp the individual

3    violations.

4           Specifically, in this case you have two types of

5    prejudices that are really becoming apparent.  The first

6    prejudice is the prejudice what's called Hall H-a-l-l

7    prejudice under United States versus Hall and what's

8    happening here is when my client first gets arrested in

9    January of 2002, the landscape of the case is a lot of

10   different.  There's not as many people that are sitting in

11   MDC that are cooperating that are providing inculpatory

12   information.  Like in the case of Hall, that case was delayed

13   so the government could entertain in plea negotiations.

14          But what the rule that came out of the case was an

15   example of prejudice is when it's continued and then one of

16   the codefendants then decides to cooperate against the

17   objecting codefendant, he's obviously prejudiced because

18   there's now another witness against him.  The landscape of

19   the case keeps changing for my client because as we keep

20   continuing it, and many of the defendants and the Court could

21   take judicial notice, there's at least 15 or so that are

22   detained in this case.  The pressure of preventive detention

23   has a very strong impact on individuals and a lot of

24   individuals simply get tired of being in custody.

25          And it does make a difference statistically on

1   individuals pleading guilty or not, and so as this case has

2   progressed, more and more individuals have now pled guilty.

3   Some have provided inculpatory information against my client

4   so he's being prejudiced because of this delay.  If we had

5   went to trial back in the first continuance, there would have

6   been less prejudice.  Now in this particular --

7        THE COURT:  We don't really know that because if we

8   had really gone to trial earlier on, you can't say for

9   certain that some of the people who have entered guilty pleas

10  would not have done so.

11       MR. RICHARDS:  Well, they didn't up until that time

12  and now more people have come in and proffered since then so

13  that's the gap that I'm using.  I'm just trying to show the

14  Court the prejudice.  Meanwhile, he's still detained.  He's

15  made numerous applications for bail.  You then have this

16  other thing developing and that's the substantive due process

17  rights.  How long do we keep someone in jail just to satisfy

18  the joinder of the government?

19       You have also other counsel coming in and out.

20  Other counsel saying well now because there's, you know,

21  admittedly there's more evidence against other defendant than

22  my client so the other counsel need more time to absorb

23  additional discovery that's been provided so he's prejudiced

24  again because of the joinder.  That's the point I'm trying to

25  make is that this joinder the government chose to do for

1    their economy is now prejudicing my client because every

2    indulgence is made to accommodate the joinder, that's the big

3    systemic thing that is causing the delay by one defendant

4    which then carry over under 316187, but I have a motion for

5    severance pending.

6         So I have tried to procedurally block from my

7    client being carried over with the government providing more

8    discovery to other defendants or other defendants pleading

9    guilty and the landscape changing.  That's the type of

10   prejudice we're dealing with.  Also now from the stipulation

11   I learned for the first time that the government captured

12   Raof Isa.  That's the fugitive brother.

13        THE COURT:  I'm aware of that.

14        MR. RICHARDS:  And, of course, just to remind the

15   Court, I heard on and on in these bail motions that it's very

16   difficult to find somebody if they escape to Israel, but of

17   course they announced they found him ultimately.  Another Isa

18   has plead guilty in this case or there's a plea agreement

19   signed.  So the issue is that the Court in my respectful

20   argument to the Court needs to give my client some

21   vindication of some individual right here.  Either give him a

22   severance, give him bail, or acknowledge some individual

23   right, but just to continue it . . .

24        The reason why I objected was I'm out of town.  I

25   get something in the mail, not even faxed to me, a motion, an

1   ex parte motion to continue.  The Rule 7.18 says they're

2   supposed to get my input.  Obviously, I've opposed a

3   continuance and to expect me to have to respond to every

4   continuance, first of all, there's no prejudice to my client

5   until it's granted.  I also think that in all fairness to my

6   client, it's a critical stage of the proceeding a continuance

7   on a right that he's vindicated.  I can't have him

8   participate in that process because he's in custody.  Me

9   filling out a verbal opposition I don't believe involves him

10  in this.

11          And in all fairness to the way this was done, it's

12  very difficult for me recreate ex parte proceedings in the

13  mind of a defendant.  When they're sitting here and they hear

14  the Court make rulings, that's the best way for the defendant

15  to understand the process and that's why, another reason why

16  I objected.  If we're going to keep him in custody and not

17  give him bail and not give him a severance, I want him to

18  hear the arguments from everybody so he knows what's going on

19  and that helps me in my ability to have a decent

20  communication with him, you know, rather than explaining.  So

21  that was another reason I wanted to bring forward that I

22  didn't have time in my procedure.

23          But I think in this case that it's understandable

24  when you have this large joinder and you have these continual

25  people coming in and proffering and this deal-making being

UNITED STATES DISTRICT COURT

1    arranged that we're going to keep having continuances.  But

2    at some point, there has to be this vindication.  The way we

3    get around it is you don't carry my client over anymore.  You

4    just let him have the trial and if the government wants to

5    keep going, that's up to them.  But I'd never saw the

6    enactment of the federal rule allowing joinder as superior to

7    these other rights.

8         This is getting to the point where it really is

9    implicating his substantive due process.  I mean to have this

10   long of incarceration is really getting to the outer limits

11   of what's appropriate.  And one of the real reasons is

12   because there is so much evidence against certain defendants.

13   And I think that there's nothing unreasonable about starting

14   my client's trial with my client and I on the date.  The last

15   time if the Court reviews its own comments, the Court said

16   this is the date.  We're going to go to trial.  The Court

17   said to me, Mr. Richards, I appreciate all these concerns

18   you're raising, but that's why we're sitting a firm trial

19   date.  I have everybody here.

20        And now I remember I also made a motion that the

21   government be precluded from introducing more evidence if

22   they turn it after a discovery cutoff date and everyone

23   laughed at that motion saying well, we're not going to tie

24   the hands of the government, it's unfair, but because of the

25   late turn over that's what caused another defendant's counsel

1    to move for the continuance.  It has to stop at some point.

2    I think that it's not an unreasonable request if my client

3    wants a speedy trial that he should just get it.  That's not

4    a lot of prejudice because he's just asking for something

5    he's statutorily and constitutionally entitled to, and the

6    government the only thing they can say is it cost them more

7    money to try the case twice.  It's a waste of resources.

8         But if we really look at it, how many people are

9    going to go to trial in September?  I also asked for the

10   record, I asked we should have a cut off date where

11   defendants have to elect are they going to plead guilty or

12   going to trial.  The Court wasn't inclined to adopt that

13   recommendation and that's fine, but at some point I think

14   that this has been long enough that when he's in custody this

15   long that he should either get his trial or get bail.

16        We have to alleviate some of the prejudice.  Just

17   saying two more months of your life without resolution,

18   possibly more, and there may be great reasons in September.

19   I'd be very hard pressed that new counsel coming into this

20   case is going to get ready by September.  I find it very

21   difficult when you take the translations, the wire taps, the

22   mountain of evidence.  I think at some point it's not

23   unreasonable for me to say let's just have two trials and see

24   what happens.

25        There may never been another trial in September.

UNITED STATES DISTRICT COURT

1    What we do know is Mufid Isa wants his trial now and that's

2    not unreasonable.  We have litigated Fourth Amendment issues.

3    I have filed all sorts of pretrial motions in this case and I

4    think that at this point, it's time for us to go to trial.

5    There's been no changed circumstance between the Court's

6    admonitions before it granted the last continuance to this

7    July trial date to now except that the government provided

8    more discovery to one lawyer who wants more time and that's

9    fine so there's a provision that allows me to separate myself

10   and that's all I'm asking to do.  Let my client have his

11   trial now.

12               THE COURT:  All right.  Thank you.  Mr. Stern, do

13   you wish to respond?

14               MR. STERN:  Yes.  It seems like defense counsel is

15   most unhappy with the idea that as time passes more people

16   who are charged as defendants are coming in and proffering to

17   the government and providing additional evidence.  Some of

18   which effects his client, some of which does not effect his

19   client.  But this is the reality that typically happens

20   during the course of large indictments when some people

21   decide they want to get a better deal by providing the

22   evidence that they have.

23               THE COURT:  Well, I think what you're saying to me

24   and I happen to think you're correct is that time may be

25   prejudicial, but the question is is it unfair prejudice.  Is

1   something happening here that's unfair?  I don't think so,

2   but by the same token, I think Mr. Richards is correct that

3   somewhere down the road we're going to have a trial.  I'm not

4   prepared to change my ruling regarding continuing the trial

5   from July to September.  I think that's appropriate given all

6   the facts and circumstances, but we are going to have get

7   this case to trial.

8          MR. STERN:  I understand that.  The Court is

9   exactly right.  There clearly is prejudice because any time

10  witnesses become cooperators and provide evidence, there's

11  prejudice, but the Court is right.  If we had tried this two

12  or three months earlier, there's no reason to believe that a

13  similar amount of people would not have come in.  And

14  similarly if we had tried this within the first 15 days,

15  there would have been perhaps less people, but that's not how

16  the speedy trial act operates.

17          And defense counsel seems to be ignoring both the

18  statutory indicators and the case law which says that if

19  there are a large group of people who are part of a single

20  conspiracy, the preference is for them to be tried together.

21  The Speedy Trial Act in particular 18 USC 3161 subsection H

22  subsection 7 anticipates the type of situation that defense

23  counsel is unhappy with.  And what it says is that if there

24  are defendants against whom the speedy trial clock has not

25  run, then other defendants may be brought along with them.

1          I understand the Court's point.  There's going to

2     come a point where he is entitled to the trial.  That point

3     is not now particularly --

4          THE COURT:  But I am hoping that time is September.

5          MR. STERN:  I certainly hope so as well.  But what

6     we have to realize is that the Court's reason for continuing

7     the trial was not for the purpose of allowing additional

8     people to come in and plead.

9          THE COURT:  Absolutely not.

10         MR. STERN:  The Court's reason was because number 1

11    some of the defense attorneys had asked for a continuance to

12    digest the material.  And number 2 another attorney who was

13    part of this trial was quite sick and ultimately died.  These

14    are reasonable reasons for continuing the trial.

15         THE COURT:  Yes, Mr. Richards.

16         MR. RICHARDS:  Is the Court -- does the Court have

17    any consideration toward my position that if we brought in

18    more bail resources that because of the length of detention,

19    now we have the available resources of one of the brothers

20    that's already pled because now that they've pled, we can use

21    those bail resources so we could almost increase by 50 to

22    100 percent.  I think we would be dealing with 16, 17

23    children whose parents would be posting their primary homes

24    in the Illinois area so my client could get bail.  I don't

25    think -- at some point will the Court -- is the Court

1    inclined to consider any sort of accommodation to alleviate

2    the prejudices just the preventive detention?

3         Now counsel has not addressed the issue of the fact

4    that he has been preventively detained for this amount of

5    time.  And there's also a statute, it's 3163 I think that

6    states that trials have to -- if you're preventively

7    detained, that the trial has to be within 90 days, but is

8    subject to the excludable time periods of 3161.  We're way

9    past any speedy trial for preventive detention.  And in this

10   case, my client is different than someone on bail because he

11   has been detained, and I think that it's not unreasonable

12   compromise if I can just request that the Court consider -- I

13   asked that at the time, too if the Court would at least

14   consider looking at a new bail package with the resources we

15   have with the brother who is not going to seek get bail now

16   that he's pled guilty.

17        THE COURT:  The answer is not I'm not going to give

18   you an advisory opinion.  If you think you can bring a

19   significant set of changed circumstances from your last bail

20   motion, I'll look at it very seriously and obtain the input

21   from pretrial services.

22        MR. RICHARDS:  So you mean the Court would be

23   willing to at least afford me on a hearing on it?

24        THE COURT:  Absolutely.

25        MR. RICHARDS:  And then as far as responding to the

UNITED STATES DISTRICT COURT

1    prejudice, I would just ask the Court to review if the Court

2    wouldn't mind that Hall case as the Court has so diligently

3    always reviewed cases that I have cited and the reason is

4    because we're now dealing with the fact that counsel is sort

5    of agreeing with me that there is prejudice.  It's just not

6    prejudice in the form of constitutional terms that may

7    require a dismissal.  316187 allows the carry over, but

8    that's only if there's no motion for severance pending.  And

9    I have asked this Court numerous times that if there's a

10   motion to continue, then I have a motion for severance.

11          So you can't use that provision if there's a motion

12   for severance pending.  And now that I have one pending

13   because I wouldn't have activated it.  It's conditional only

14   upon the date being moved.  I wasn't going to move to severe

15   based on joinder issues, but my motion to severe the last

16   time I told the Court I would want to move to severe if we

17   moved to continue the date.

18          So I assume for the record, we have to deny that

19   motion to then get to the 316187 provision which would then

20   allow the carry over because it can't be carried over if

21   there's a motion for severance pending.  That's why I'm

22   making the motion for severance so I won't be carried over.

23          THE COURT:  In other words, if I may simplify it,

24   you would like me to deny the motion.  You would prefer that

25   I grant the severance, but if I'm not going to grant it, you

1    would like me to deny it so you do not have a pending motion

2    that creates excludable time.

3          MR. RICHARDS:   Correct.   And I want the Court also

4    to be clear that I didn't make this motion until the Court

5    moved to continue the trial date to September.   I didn't make

6    the motion before there was a continuance because I had

7    explained to the Court there's sort of a procedural lacuna

8    here and that is I cannot make a motion to severe to prevent

9    my client from being carried over with the other defendants

10   unless there's actually going to be continuance because I

11   didn't, besides the objections I have already stated, I

12   wasn't going to keep remaking the same motion to severe if we

13   were going to have the July trial date.   Once I found out

14   that there was a continuance, I'm now making a motion for

15   severance and not to be carried over.   Yeah, I guess I'd like

16   you to deny it.

17         THE COURT:   I'm not willing to grant it at this

18   time.   Deny it without prejudice.

19         MR. RICHARDS:   Okay.   Thank you.   And then the last

20   thing is dealing with this prejudice, I respectfully disagree

21   that even though it may happen more people come in and

22   provide statements and evidence, that is prejudice in speedy

23   trial terms.   The whole point of the speedy trial or one

24   point or one documented point of prejudice is if the

25   defendant once they're arrested and the decision to charge

1    them has been made doesn't waive their speedy trial, they get

2    to go to trial with the evidence that the government has

3    collected before the government made the decision to bring

4    the forces of government against the individual defendant.

5    In a theoretical sense, by going to trial quickly, they then

6    contain the amount of evidence that can come in against them.

7         Now, yes, I agree that maybe some of these people

8    would have rushed to the 14th floor of this building at the

9    last minute if we had a fast trial date.  However, what is

10   true is that since this trial date was continued we are

11   having more and more evidence come in, some of it against my

12   client, some of it not and that's just the prejudice I'm

13   trying to document.  And when the Court reads the Hall case

14   it will see that that was the prejudice that the 9th Circuit

15   dismissed the indictment on because Hall was able to show

16   that if they would of gone to trial when he originally

17   requested, then the codefendant didn't become a snitch

18   against him.  And that's why I'm arguing that based on what I

19   read in that case.

20        THE COURT:  Well, I'm going to go read Hall, but

21   the fact of the matter is I think that the trial was

22   continued specifically because of Mr. Boren's illness and

23   because of Mr. Katz's request that the trial be continued to

24   permit him to absorb the documents.  Plus the fact that I

25   believe another fugitive was apprehended in the course of

1    events.  I have never thought this trial was being continued

2    because the government somehow or other needed more time to

3    cause other defendants to plead guilty and that certainly was

4    not the basis of any ruling I have made in this case.

5             MR. RICHARDS:  And I agree.  I don't think that the

6    Court is thinking -- I believe the Court has found valid

7    grounds in the Court's opinion on these other issues.  What

8    I'm saying is I'm not arguing the government intentionally

9    tried to delay the case so they can get more cooperators.

10   What I'm just showing the Court is that is the fact and

11   that's the prejudice that is caused my client.  It's an

12   objective standard.  The government doesn't have to have

13   scienter to somehow manufacture these continuances.  The

14   Court did find the other grounds, but my client is being

15   prejudiced from the carry over because his lawyer is not sick

16   or seeking a continuance and that's what I'm trying to show

17   the Court that he has real prejudice because the case has

18   gotten worse against him since January 2002.

19            THE COURT:  Okay.  I have your argument in mind.  I

20   understand your argument.  I just frankly disagree.

21            MR. KATZ:  It was my ex parte application and this

22   may come up for other people in the case.  It's really almost

23   facetious to argue that when there's over 20 other

24   codefendants' counsel that one is supposed to call each one

25   and then somehow reflect their opinion.  I think what I did

1    and I think what other counsel would be well-advised to do is

2    simply serve all the other people.  And I think Court acted

3    completely appropriately and gave everybody a chance after I

4    had served them all I think two weeks to voice any objection.

5    I understand that Mr. Richards just didn't and those things

6    happen.  We all have busy practices.  And I think that

7    basically he's made a motion for reconsideration that's been

8    denied.  I just don't want it hanging out there that somehow

9    I either colluded with the government or proceeded in some

10   way that was in violation of the local rules because there is

11   some necessities of the number of codefendants' counsel.

12          THE COURT:  I don't think any of us are thinking of

13   that and I frankly waited the two weeks because this is not a

14   shy crowd.  There has been no one in this room who has been

15   reluctant to come in and tell me that I should be doing

16   something differently than I have been so having heard

17   nothing, I thought that was some indication that at least

18   people if they did not oppose the trial at least believed

19   there were not good grounds in these circumstances to come in

20   and oppose the continuance.

21          MR. KATZ:  And I thought the same, and I must say

22   and I disagree with the government vigorously about many

23   things in this case, but I understand why they reasonably

24   thought the same thing.  The last thing I wanted to say,

25   Your Honor, is just reflecting back on the amount of time

1    that it took those of us who have been in the case for more

2    than a year to absorb the discovery, I really commiserate

3    with the people who entering the case now or the last few

4    weeks.  I really think we're going to be in a situation with

5    a group that's going to be ready to go to in the fall and

6    another group that really is not going to be reasonably ready

7    to go in the fall.  And I would just ask the Court to keep in

8    mind that that might be a fair way to severe out two groups.

9              THE COURT:  It may be what I have to do.  I

10   understand.

11             MR. KATZ:  Thank you, Your Honor.

12             MR. STERN:  Your Honor, just one other point that I

13   wanted to make and that was that it's become clear to the

14   Court that Raof Isa the brother of Mufid Isa was arrested as

15   fugitive in Israel.  And in my conversations with

16   Mr. Richards, it was my understanding that there was

17   exculpatory evidence that he anticipated that Raof Isa would

18   have for his client Mufid Isa.  So this was not something

19   that we knew originally, but consequently, it also leads to a

20   reasonable conclusion that it's appropriate to delay the

21   trial so that the process can proceed forward and Raof Isa

22   can extradited to the United States and apparently provide

23   this allegedly exculpatory evidence.

24             THE COURT:  Well, but that's an argument that

25   Mr. Richards is going to have to make.  I don't think you can

UNITED STATES DISTRICT COURT

1    make it on his behalf.  So let's wait and see what he argues.

2          MR. STERN:  I was just simply placing it on the

3    record because that was one of the reasons also that we cited

4    in the proposed order and we're working diligently to bring

5    Raof Isa back frankly as quickly as we can.

6          THE COURT:  All right.  Anything further for today?

7          MR. BACKMAN:  Your Honor, Larry Backman on behalf

8    of Carlos Garcia Aguayo.  He is still being maintained and

9    housed in San Bernardino County Jail.  I had previously made

10   a request to the Court to move him to MDC.  That was denied

11   for whatever reason.  That was some time ago.

12         THE COURT:  It was sometime ago and since then my

13   understanding was everyone should have been brought back and

14   if your client has not been brought back to MDC, let

15   Mr. Galvez know and I will prepare an order.  Because I have

16   discussion with MDC and requested that everyone be brought

17   back.  I'm not as you know in position to order them to do

18   much of anything, they'll do what they want, but having had a

19   reasoned discussion with them, they agreed that everyone

20   could come back.

21         MR. BACKMAN:  I would ask for that order to issue

22   as soon as possible, Your Honor.  One of the reasons being I

23   attempted to -- I was here at 12:00 today in order to discuss

24   this case with my client.  I would of thought he would have

25   been transported by noon for a 3 o'clock status.  He was not

```
 1    here until after 2 o'clock today.  So I have not had an
 2    opportunity to speak to him.  If there's any way he could be
 3    kept at MDC overnight tonight and that order be transmitted
 4    to both the marshal and the BOP, I would certainly appreciate
 5    that.
 6              THE COURT:  I'm prepared to make that order right
 7    now that your client will remain overnight at MDC.  We will
 8    order that he be transferred back.  I don't know if he has to
 9    go back to San Bernardino for some technical purpose, but
10    certainly you ought to be able to meet with him and be with
11    him tomorrow at MDC.
12              MR. BACKMAN:  Thank you very much, Your Honor.
13              THE COURT:  Yes.
14              MR. ANDERSON:  I too would like an order without
15    having to make a motion.  Mr. Moberly who just came into the
16    case is representing Mr. Said Abdelaziz.  My client Rasheed
17    Aziz.  We would like to meet together.  There's a rule
18    prohibiting us meeting together unless the Court orders that
19    we can do so.
20              THE COURT:  That's not something I'm going to get
21    involved in.  It is one thing to have clients here so that
22    their counsel can meet with them.  I'm not going to start
23    telling MDC how to run MDC.  I think you should see if you
24    can resolve that with the United States Attorney's Office.
25    Some of these issues have been resolved previously.
```

1          MR. ANDERSON:  Well, my last discussion with them

2    is that they indicated to me I would need a court order to

3    allow me to meet with two defendant at one time in the same

4    room and that's where we're at.

5          MR. STERN:  Frankly, I have never had a discussion

6    that I'm aware with defense counsel in relation to that.

7    Maybe he's talked to MDC about that and they may have

8    indicated a court order, but we have not had this discussion.

9    I'm certainly willing to call MDC if you'd like.

10          THE COURT:  Would you do that, please.

11          MR. ANDERSON:  That would probably suffice,

12    Your Honor.  Thank you.

13          THE COURT:  All right.  Mr. Treman.

14          MR. TREMAN:  Your Honor, I just want to be clear

15    then the current ordered trial date is the trial date?

16          THE COURT:  Yes.

17          MR. TREMAN:  Because I know Your Honor has an

18    application pending with regard to changing counsel for one

19    of the defendants.

20          THE COURT:  I do for, at least I have one here

21    which if we're talking about counsel who was at your prior

22    hearing today, yes.  Mr. Behazdi.

23          MR. TREMAN:  Mr. Behazdi has an application

24    pending.

25          THE COURT:  Mr. Stambler has indicated that he

1  would come into the case.

2        MR. TREMAN:  I don't know and that's why I'm

3  raising it now while we're all sitting here that is

4  Mr. Stambler going to take the position that he's ready to go

5  on the current trial date or not.  I don't know that the

6  Court has an answer to that.

7        THE COURT:  I don't have an answer to that.

8  Obviously, Mr. Ayeh has to have an attorney who is ready to

9  go to trial.  It's unfortunate that we've had these things

10 happen.  I'm going to do everything I can to keep this as a

11 unit and go to trial in September.  If there is exceptionally

12 good cause and I can't think of it right now, but there's

13 exceptionally good cause for a severance of some of the

14 defendants, then maybe that's what we're going to have to

15 look at.

16        But there is a strong preference as Mr. Stern has

17 said in the case law that I not severe except in very

18 exceptional circumstances that don't appear to be present

19 yet, but I'll keep an open mind on the subject.

20        MR. TREMAN:  And so as things currently stand, the

21 trial date is the Court's fixed trial date?

22        THE COURT:  That is my view of the matter, yes.

23        MR. TREMAN:  Thank you.

24        THE COURT:  Okay.  Anything further?

25        Okay.  Then I'm sure I'll see you before, but most

1    assuredly in September.

2            (Proceedings were concluded at 4:10 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

```
 1
 2                    CERTIFICATE OF REPORTER
 3
 4   COUNTY OF LOS ANGELES      )
 5                              )   SS.
 6   STATE OF CALIFORNIA        )
 7
 8   I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED
 9   STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,
10   DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE
11   FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET
12   FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN
13   FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO
14   FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION
15   OF MY STENOGRAPHIC NOTES.
16
17
18   DATE:  June 14, 2006
19
20   _____
21   LAURA MILLER ELIAS, CSR 10019
22   FEDERAL OFFICIAL COURT REPORTER
23
24
25
```

UNITED STATES DISTRICT COURT