ORIGINAL

FILED

2006 SEP 25 PM 3:04

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

THE HONORABLE CHRISTINA A. SNYDER, JUDGE PRESIDING

UNITED STATES OF AMERICA,
Plaintiff,
vs.
CR-02-3-CAS-1
RASHEED AZIZ, et al.,
Defendants.

------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

March 24, 2005

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA 92701
(714) 543-0870

DOCKETED
OCT - 4 2006
BY 184

2816

APPEARANCES OF COUNSEL:

For the Plaintiff:

DEBRA W. YANG
United States Attorney
STEVEN D. CLYMER
Special Assistant United States Attorney
Chief, Criminal Division
MICHAEL J. STERN
CHRISTOPHER BRUNWIN
Assistant United States Attorneys
312 North Spring Street
Los Angeles, CA 90012

For Defendant SAID ABDELAZIZ:

DAVID J.P. KALOYANIDES
DAVID J.P. KALOYANIDES LAW OFFICES
One Wilshire Building
624 South Grand Avenue, Suite 2200
Los Angeles, CA 90017-3323

For Defendant RASHEED AZIZ:

GEORGE BUELLER

ALSO PRESENT:

Arabic Interpreter

SANTA ANA, CALIFORNIA; MARCH 24, 2005; P.M. SESSION

THE CLERK: Calling Case No. CR-02-3-CAS, United States of America versus Rasheed Aziz, et al.

Counsel, please state your appearances.

MR. STERN: Michael Stern and Christopher Brunwin on behalf of the United States.

MR. KALOYANIDES: David Kaloyanides for defendant Said Abdelaziz who is present.

MR. BUELLER: George Bueller for defendant Rasheed Aziz who is present.

THE COURT: We have as you know a further note, and I think at this stage I am going to bring them down. "Hopelessly deadlocked" suggests to me they should be discharged.

THE CLERK: We got another note. I am going to make copies.

MR. STERN: Would you like our response?

THE COURT: Yes.

MR. STERN: Well, it looks like several of the jurors are apparently having a problem with one of the jurors. I think the appropriate thing to do if this is perhaps causing the deadlock and has something to do with the standard deliberations is inquire of those jurors what the problem is. If it's something like the juror is sitting and reading a fashion magazine and refusing to deliberate or

receiving outside information or a variety of other things, that's something the Court should consider in trying to create a remedy.

THE COURT: Let me say this. I am going to have the foreperson come down and speak to all of us, but I am not going to I think under any set of circumstances dismiss a juror. I cannot conceive of a circumstance under which I would dismiss a juror. I know other judges have done it, but I don't think it's appropriate, so let me start with that.

MR. STERN: I don't agree that jurors cannot be dismissed because the statute --

THE COURT: They can in very care circumstances.

MR. STERN: We have no idea what those circumstances are. I think we should first find out the circumstances and go from there. It seems to make the most sense.

MR. KALOYANIDES: I am a bit puzzled by the note coming after now our third deadlock in the case.

THE COURT: I understand.

MR. KALOYANIDES: I am also puzzled it's signed by someone other than the foreperson.

THE COURT: That happens all the time.

MR. KALOYANIDES: Then that may not be an issue. The fact that this is coming up at this point after --

again, a third note of a deadlock -- I don't know that we can necessarily assume that that is part of the deadlock. I am not sure that it would be appropriate under these circumstances to make any inquiry regarding the problem before addressing the fact that they have voted -- are deadlocked for the third time now.

MR. STERN: Obviously, if the juror was having some type of discussion externally -- obviously, we don't know the extent of it, but I don't think we can ignore this. We need to find out what is going on. Only from that point can we address it. It may be that it doesn't change the ultimate outcome.

THE COURT: I think we have to hear from the foreperson. I don't think it's going to change my views that the jury is hopelessly deadlocked if for no other reason because these people have been trying to do something over several days. If he says he would really like to talk, if possible, I think I owe it to him.

MR. STERN: I agree a six-week trial -- if it comes to a deadlock, it comes to a deadlock. To the extent they are telling us there is a problem, I think we should address it.

THE COURT: I think we should tell Mr. Bennett to come down.

MR. KALOYANIDES: I was going to say I would

probably object to addressing this issue in front of the whole panel.

THE COURT: I think he should come down alone. His note is he would like to talk to us. Then we will see what to do next.

MR. STERN: It's signed by two people, the foreperson --

THE COURT: I am not going to bring another juror down here. I don't want to start bringing others down when the foreperson can apparently speak for everybody.

MR. KALOYANIDES: Thank you, Your Honor.

(Foreperson enters courtroom.)

THE COURT: I am going to ask you some questions, but I want to remind you must not tell us how any juror stands, how the vote stands, or anything like that. Keep that in mind.

I gather and see it probably was printed by Juror No. 3 but signed by you that some jurors are upset with Juror No. 3.

THE FOREPERSON: Yes.

THE COURT: Can you tell me in general terms without telling me any juror's position what the concern is?

THE FOREPERSON: The concern is a few things. The juror interrupts. The juror says things without thinking. The juror makes comments like that was a stupid thing to

say, irritating things, and really doesn't think that well.

THE COURT: Okay. I think that answers my question, so I am going to let you go back upstairs.

(Foreperson leaves courtroom.)

THE COURT: All right, I don't see anything based on those statements which would suggest to me that it would be appropriate to excuse her. I think we just have a juror who has different views than her fellow jurors and maybe doesn't have the same thought processes as her fellow jurors, but it sounds to me like they are very much deadlocked, so I am going to bring them down again and discharge them. I just don't see anything else to do. I will hear from everyone else one more time.

MR. STERN: Apparently there is animosity going on during the deliberations. I think the foreperson indicated that. An instruction from the Court asking the jurors to consider each others views politely and with civility and to use that as the framework by which they deliberate may be of some assistance. Again, in a six-week trial, it seems that at a minimum we should do that.

MR. KALOYANIDES: Your Honor, there was nothing in what Mr. Bennett said that indicated that Juror No. 3 has not participated, has not reviewed the evidence. It sounds like she may have a lacking in social skills, and she is being rude it sounds like. That does not affect the

deliberations as far as the process. It's simply a matter that people have been upset with her behavior. They have deliberated. They can't now after three notes come to a conclusion. It's time to let them go.

THE COURT: I agree. The problem is that I did not take Mr. Bennett's comments to suggest that she is inconsiderate or rude. I think what he is saying is she just thinks about things in a different manner than the other jurors without going the next step and -- I don't want to ask -- I have to just conclude that they are in fact hopelessly deadlocked.

MR. STERN: But I think he said she was calling other jurors stupid.

THE COURT: I think he said comments about that's stupid -- that she was referring to someone as stupid in deliberating with respect to the opinions of other jurors.

MR. STERN: That may be resolved if the Court asks her -- instructs the jurors in general that they need to be courteous and considerate, and that's the framework under which they should deliberate. There isn't really much to lose, and if they can't come to a final verdict, they can certainly tell us again. It doesn't seem we have a lot to lose in this circumstance considering the length of this trial and the efforts they have made to deliberate and their desire to bring to the Court's attention a problem with a

particular juror.

MR. KALOYANIDES: After three notes that they are deadlocked, it's becoming worse, and to send them back and say try it again --

THE COURT: I agree with you, so I am going to discharge them.

Did I ask Mr. Bennett if they were deadlocked?

MR. KALOYANIDES: He specifically responded to the question. You asked him.

(Jury present.)

THE COURT: Good afternoon again.

Ladies and gentlemen, I am not going to go through and ask all the long questions. All of you except Ms. Lewis previously indicated that the jury was hopelessly deadlocked, and I take it you all remain of that opinion.

Just raise your hands if you have a different opinion now than before.

Ms. Lewis, are you of the opinion that the jury is deadlocked?

JUROR LEWIS: Yes.

THE COURT: Assuming the jury remains composed as it is presently composed, do you believe there is a chance that the jury could reach a verdict?

JUROR LEWIS: No.

THE COURT: Then, ladies and gentlemen, I am going

to discharge you at this point in time, and you may now speak about the case if you wish. I rather expect that the lawyers on both sides may wish to speak with you. It's up to you as to whether or not you wish to speak with them, but in any event, we want to thank you.

We know this has been a very difficult experience for all of you. You have all worked very hard, and we very much appreciate your efforts. On behalf of the Court and on behalf of my colleagues, I want to thank each and every one of you for the many sacrifices you have made in this matter. You are free to go, and you are free to speak or not to speak with counsel in the case. Thank you.

(Jury discharged.)

THE COURT: All right, I will let you guys go.

MR. STERN: Are we going to set a retrial date?

THE COURT: I think we need to. The only question is -- it can't be May 17 -- well, we have the other case -- let's set it for May 17. I would like to try it in April if we could if I have more time. I gather counsel have problems in April. Let's set it for May 17. I want a status conference earlier. This time we are going to proceed with some very rigid time limits so this doesn't happen again.

THE CLERK: May 2.

THE COURT: Much earlier than that. I want them in

two or three weeks before.

THE CLERK: April 18.

THE COURT: April 18 for a status conference at 1:30.

MR. KALOYANIDES: That's fine.

THE COURT: So we will see you here on the 18th.

MR. BUELLER: We intend to renew some of the motions made --

THE COURT: I understand.

MR. KALOYANIDES: Thank you.

THE CLERK: Counsel, I need the exhibits released back to the government.

MR. KALOYANIDES: What about the defense exhibits?

THE COURT: Maynard, you have to get the defense exhibits back to them, too.

*(Proceedings were adjourned.)*

-oOo-

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: September 24, 2006

Sharon A. Seffens 9/24/06

SHARON A. SEFFENS, U.S. COURT REPORTER